UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS ESPINO,<br><br>        Plaintiff,<br><br>    v.<br><br>WALGREEN CO., et al.,<br><br>        Defendants. | No. 2:15-cv-00423-MCE-AC<br><br><br>FINDINGS & RECOMMENDATIONS |

On March 2, 2016, the court held a hearing on separate motions to dismiss filed by defendants Walgreen Co. ("Walgreen"), Alvin Webber ("Judge Webber"), and Stockton MRI & Molecular Imaging Medical Center Inc. ("Stockton MRI"), and Judge Webber's motion to declare plaintiff a vexatious litigant. Plaintiff Carlos Espino appeared in pro per, Lori Reihl appeared on behalf of Stockton MRI, Alexandra Sterlin appeared on behalf of Walgreen, and Carol Finuliar appeared on behalf of Judge Webber. Defendant Liberty Mutual Insurance Company's ("Liberty Mutual") motion to dismiss has been taken under submission. On review of the motion, the documents filed in support and opposition, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

PROCEDURAL BACKGROUND

Plaintiff filed his original complaint on February 24, 2015, alleging that Walgreen discriminated against him based on race and disability by refusing to provide him certain

medications. ECF No. 1. The court dismissed plaintiff's complaint on May 21, 2015, after hearing on Walgreen's first motion to dismiss. ECF Nos. 8, 14. On June 11, 2015, plaintiff filed a first amended complaint (FAC), which included allegations similar to those in his original complaint. ECF No. 15. On June 25, 2015, Walgreen moved to dismiss plaintiff's FAC. ECF No. 16. On September 21, 2015, following a hearing, the court issued findings recommending that Walgreen's motion be granted without leave to amend. ECF No. 22. On November 12, 2015, the presiding district judge adopted the findings and recommendations in part, dismissing plaintiff's FAC with leave to amend. ECF No. 26.

On November 30, 2015, plaintiff filed his second amended complaint (SAC). The SAC asserts claims under 42 U.S.C. §§ 1981, 1983, 1985[1] and the Racketeer Influenced and Corrupt Organizations Act (RICO) not only against Walgreen, but also against Judge Webber, Stockton MRI, Liberty Mutual, and Dr. Morris Senegor.[2] ECF No. 27.[3] The SAC is primarily concerned with an alleged conspiracy between defendants to kill plaintiff, both by administering harmful medical treatment and by withholding needed medications. Id.

On December 21, 2015, Walgreen filed a motion to dismiss the SAC. ECF No. 29. On January 8, 2016, Judge Webber filed both a motion to dismiss and a motion to declare plaintiff a vexatious litigant, along with a request for judicial notice.[4] ECF Nos. 31–33. On February 8,

---

[1] The SAC refers to 18 U.S.C. § 1985. There is no such statute. Because the SAC alleges generally that defendants conspired to racially discriminate against plaintiff, the court construes the SAC as asserting claims for violation of 42 U.S.C. § 1985, which prohibits conspiracies to interfere with civil rights.

[2] Dr. Senegor has not appeared.

[3] Plaintiff's SAC also includes references to HIPPA. The court does not construe the SAC as asserting HIPPA claims against defendants, however. Plaintiff only mentions HIPPA, or the Health Insurance Portability and Accountability Act, once on the first page of the SAC. HIPPA is not cited in the sections of the SAC identifying plaintiff's claims as to each defendant.

[4] Judge Webber also seeks judicial notice of filings in plaintiff's other state and federal court actions. ECF No. 33. Under Rule 201 of the Federal Rules of Evidence, a court must take judicial notice of an adjudicative fact that is not subject to reasonable dispute because it is either (1) generally known or "(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Because court filings are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned,' pleadings filed and orders issued in related litigation are proper subjects of judicial notice under Rule 201." McVey v. McVey, 26 F. Supp. 3d 980, 984 (C.D.
(continued…)

2016, both Stockton MRI and Liberty Mutual filed motions to dismiss. ECF Nos. 40, 42. Plaintiff has opposed all pending motions.[5] Liberty Mutual's motion to dismiss has been taken under submission without hearing. ECF No. 50.

## THE SECOND AMENDED COMPLAINT

Plaintiff alleges that in 2010 Dr. Senegor scheduled him for an MRI. ECF No. 27 at 5. When plaintiff arrived at Delta Radiology to receive that MRI, he was told that it would be done with contrast dye. Id. Plaintiff initially refused to have an MRI done with contrast dye but the technician insisted, stating that Liberty Mutual requested the MRI be done with contrast dye. Id. On May 20, 2013, plaintiff underwent a second MRI at Stockton MRI. Id. Plaintiff was again informed that the MRI would be performed with contrast dye, this time because Dr. Senegor requested it. Id. The plaintiff explained to the technician that he had had a "bad reaction" to the contrast dye used during his last MRI. Id. Plaintiff also insisted that Dr. Senegor was aware of his previous reaction to contrast dye. Id. When the technician stated that Dr. Senegor had ordered contrast dye to be used despite his previous reaction, plaintiff agreed to proceed. Id.

During the procedure however, plaintiff began to sweat, vomited, coughed, and could hardly breathe. Id. at 6. These symptoms persisted for approximately twenty minutes. Id. The technician told plaintiff that he would document the reaction. Id. A couple of weeks after his MRI, plaintiff began breaking out with painful lesions all over his body. Id. Plaintiff then learned that he has nephrogenic systemic fibrosis, "a deadly disease that attacks the joints, heart, brain, lungs, and kidneys." Id. People diagnosed with this condition typically "die within 6 years after exposure." Id. Plaintiff contends that the only reason Dr. Senegor ordered his MRIs to be done with contrast die was because Liberty Mutual had been unsuccessful in its previous attempts to kill him. Id.

////

---

Cal. 2014), appeal dismissed (Apr. 22, 2015) (citing Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006)). Accordingly, the court hereby grants Judge Webber's request for judicial notice.

[5] ECF Nos. 30 (opposition to Walgreen's motion), 38 & 45 (opposition to Dr. Webber's motions), 44 (opposition to Stockton MRI's motion), 47 (opposition to Liberty Mutual's motion).

1    Plaintiff also alleges that employees at numerous Walgreen locations conspired with
2 Liberty Mutual to withhold certain medications on March 1, 2013. Id. at 4. Plaintiff alleges that
3 Walgreen and Liberty Mutual entered into this conspiracy in order to harm him. Id.

4    In 2013, plaintiff appeared before Judge Webber to litigate a worker's compensation
5 claim. Id. at 7. At some point during the litigation plaintiff attempted to submit evidence of
6 wrongdoing by Dr. Senegor, along with other medical evidence. Id. Judge Webber, however,
7 "did not allow plaintiff to submit any type of evidence." Id. In addition, one of plaintiff's
8 witnesses attempted to submit evidence when she was "physically attacked by Victoria Katchis[,]
9 an attorney for Liberty Mutual Ins." Id. Plaintiff and his witness notified Judge Webber as well
10 as a security guard, but nothing was ever done. Id.

11    Plaintiff also alleges that on September 15, 2015, he submitted evidence to Judge Webber
12 that Dr. Senegor was lying under oath. Id. Plaintiff alleges that Judge Webber tampered with
13 that evidence in an attempt to engage in a "cover up" for Dr. Senegor and Liberty Mutual. Id.

14                                    LEGAL STANDARDS
15    I.    Failure to State a Claim

16    "A motion to dismiss under Federal Rule of Civil Procedure 12(b) (6) for failure to state a
17 claim upon which relief can be granted tests the legal sufficiency of a claim." Conservation Force
18 v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks omitted), cert. denied,
19 132 S. Ct. 1762 (2012). "Dismissal can be based on the lack of a cognizable legal theory or the
20 absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police
21 Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

22    In order to survive dismissal for failure to state a claim, a complaint must contain more
23 than a "formulaic recitation of the elements of a cause of action;" it must contain factual
24 allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v.
25 Twombly, 550 U.S. 544, 555 (2007). It is insufficient for the pleading to contain a statement of
26 facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of
27 action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235 35
28 (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to

1  'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
2  (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads
3  factual content that allows the court to draw the reasonable inference that the defendant is liable
4  for the misconduct alleged." Id.

5  In reviewing a complaint under this standard, the court "must accept as true all of the
6  factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing
7  Twombly, 550 U.S. at 555–56), construe those allegations in the light most favorable to the
8  plaintiff, Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir.
9  2010) (citing Twombly), and resolve all doubts in the plaintiff's favor. Hebbe v. Pliler, 627 F.3d
10 338, 340 (9th Cir. 2010) (citing Hospital Bldg. Co. v. Trustees of Rex Hospital, 425 U.S. 738
11 (1976)). The court need not accept as true, legal conclusions "cast in the form of factual
12 allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

13                                              DISCUSSION

14 For the reasons explained below, the motions to dismiss should be granted on two
15 independent grounds. First, those claims presented for the first time in the Second Amended
16 Complaint (SAC) are outside the scope of the previously-granted leave to amend. Second,
17 plaintiff has failed to state a claim against any of the defendants under any of the cited statutes.

18     I.      The Newly Presented Claims Are Improperly Included

19 The court will first recommend that plaintiff's claims against Liberty Mutual, Stockton
20 MRI, Dr. Senegor and Judge Webber, as well as his RICO, § 1983 and § 1985 claims against
21 Walgreen, be dismissed because the previously-granted leave to amend did permit plaintiff to
22 include additional defendants or claims. District courts in this circuit generally allow plaintiffs to
23 add new claims and/or parties to an amended complaint where a prior order of dismissal granted
24 leave to amend without limitation. See, e.g., Katz v. Cal–W. Reconveyance Corp., No. 09–cv–
25 04866–LHK, 2010 U.S. Dist. LEXIS 98940, at *14 n.1 (N.D. Cal. Sept. 21, 2010) (D.J. Koh).
26 On the other hand, where a prior court order granted limited leave to amend, district courts in this
27 circuit generally strike or dismiss new claims or parties contained in an amended complaint when
28 the plaintiff did not seek leave to amend. See, e.g., Benton v. Baker Hughes, No. 12-cv-07735

MMM MRWX, 2013 WL 3353636, at *3–5 (C.D. Cal. June 30, 2013) (D.J. Morrow) aff'd sub nom. Benton v. Hughes, 623 F. App'x 888 (9th Cir. 2015); Crane v. Yarborough, No. CV 05–8534–DSF (JC), 2012 U.S. Dist. LEXIS 43538, at *41 n.14 (C.D. Cal. Feb. 6, 2012) (M.J. Chooljian). Thus, whether a district court will accept new claims and/or parties in an amended complaint after a motion to dismiss depends on whether the plaintiff was granted leave to amend with or without limitation. Urista v. Bank of America, N.A., No. C11–03097–HRL, 2012 U.S. Dist. LEXIS 152, at *16–17 (N.D. Cal. Jan. 3, 2012) (M.J. Lloyd). To determine whether plaintiff was granted leave to amend with limitation, courts look at the specific language of the prior order.

In his motion to dismiss, Judge Webber argues that plaintiff's SAC is not operative as to him because plaintiff did not obtain leave from the court to bring previously unasserted claims. ECF No. 31 at 12. Plaintiff's FAC asserted claims for violation of 42 U.S.C. § 1981, the Americans with Disabilities Act (ADA), negligence, and intentional infliction of emotional distress against Walgreen. ECF No. 15. When the court dismissed that complaint with leave to amend, it stated it was giving plaintiff the opportunity to "file a Second Amended Complaint that cures the deficiencies identified in the [September 21, 2015] Findings and Recommendations." ECF No. 26. That limiting language, allowing plaintiff to "cure the deficiencies identified," does not include leave to add new claims and defendants. See, e.g., Jameson Beach Prop. Owners Ass'n v. United States, No. 2:13-CV-01025-MCE-AC, 2014 U.S. Dist. LEXIS 139734, at *11 (E.D. Cal. Sept. 29, 2014) (D.J. England, Jr.); Benton, 2013 WL 3353636 at *3. Nevertheless, plaintiff's SAC includes claims for violation of 42 U.S.C. §§ 1981, 1983, 1985, and RICO against Walgreen and four new defendants: Stockton MRI, Liberty Mutual, Judge Webber, and Dr. Senegor. ECF No. 27.

Judge Webber is correct that the claims brought against him in plaintiff's SAC exceed the scope of the order granting leave to amend, and should therefore be dismissed. In addition, the court will recommend dismissal of the other claims that did not appear in plaintiff's FAC,

////

////

6

1  specifically the §§ 1983, 1985, and RICO claims against Walgreen, and all of plaintiff's claims
2  against Stockton MRI, Liberty Mutual, and Dr. Senegor.[6]

3      II.       Plaintiff's Claims Are Substantively Insufficient To Proceed

4          The court will also recommend that defendants' motions to dismiss be granted on the
5  substance of plaintiff's claims. Judge Webber is immune from the damages claims that have been
6  brought against him. As to the remaining defendants, the court finds that plaintiff has not alleged
7  facts sufficient to state a claim.

8      A.       Judge Webber

9          Plaintiff's claims against Judge Webber should be dismissed without leave to amend
10  because they are barred by the Eleventh Amendment and the doctrine of judicial immunity.

11          Federal courts are courts of limited jurisdiction, and the burden of establishing jurisdiction
12  rests upon the party asserting it. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).
13  The Eleventh Amendment prohibits federal jurisdiction over suits against a state or state agency
14  unless the state or agency consents to the suit. See Kimel v. Florida Board of Regents, 528 U.S.
15  62, 72–73 (2000); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 53 (1996). Moreover, state
16  officers acting in their official capacities receive the same immunity as the government agency
17  that employs them. Hafer v. Melo, 502 U.S. 21, 25–26 (1991). A state official is not immune,
18  however, when sued in an official capacity for prospective relief. Duke Energy Trading & Mktg.,
19  L.L.C. v. Davis, 267 F.3d 1042, 1051 (9th Cir. 2001). Nor is the official immune when sued for
20  damages in a personal capacity. Arizonans for Official English v. Arizona, 520 U.S. 43, 69 n.24
21  (1997).

---

[6] Despite the fact that Dr. Senegor has yet to appear, the court will recommend that plaintiff's claims against him be dismissed sua sponte. "A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related." Silverton v. Dep't of Treasury, 644 F.2d 1341, 1345 (9th Cir. 1981). "Such a dismissal may be made without notice where the [plaintiff] cannot possibly win relief." Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987). The court's authority in this regard includes sua sponte dismissal as to defendants who have not been served and defendants who have not yet answered or appeared. Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery, 44 F.3d 800, 802 (9th Cir. 1995).

1    Plaintiff asserts damages claims for violation of §§ 1981, 1983, 1985, and RICO against
2 Judge Webber in his official capacity. ECF No. 27 at 1–2, 12–13. Plaintiff alleges that in 2013
3 he appeared before Judge Webber to litigate a worker's compensation claim. ECF No. 27 at 7.
4 While plaintiff was litigating his case Judge Webber forbade him from submitting evidence, and
5 stood by while one of plaintiff's witnesses was "physically attacked" by an attorney for Liberty
6 Mutual. Id. Plaintiff also alleges that Judge Webber tampered with evidence plaintiff submitted
7 showing Dr. Senegor lied under oath. Id.

8    As an administrative law judge within the California Department of Industrial Relations,
9 Division of Workers' Compensation, Judge Webber is a state officer. He is sued here in his
10 official capacity. Accordingly, he is entitled to Eleventh Amendment immunity as long as
11 California has not waived or otherwise consented to suit. Plaintiff does not allege that the State
12 of California has waived its sovereign immunity, nor is there any evidence of such a waiver.
13 Accordingly, plaintiff is barred from pursuing claims against Judge Webber.

14    Independently of the Eleventh Amendment, the doctrine of judicial immunity provides
15 that judges are entitled to absolute immunity from liability for acts performed in their official
16 capacities. Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir. 1986). This immunity covers
17 administrative law judges. See Romano v. Bible, 169 F.3d 1182, 1186-87 (9th Cir. 1999) (state
18 officials presiding over hearings entitled to absolute immunity). Because plaintiff's claims
19 against Judge Webber arise from the performance of his judicial duties, defendant is entitled to
20 absolute immunity.

21    For these reasons, the claims against Judge Webber should be dismissed without leave to
22 amend.

23    B.    42 U.S.C. § 1981

24    The court should dismiss plaintiff's § 1981 claims against all defendants because plaintiff
25 does not allege facts in support of his contention that he suffered racial discrimination. 42 U.S.C.
26 § 1981 provides, in pertinent part, that "[a]ll persons . . . shall have the same right . . . to make
27 and enforce contracts . . . as is enjoyed by white citizens." "[T]o establish a § 1981 claim, the
28 plaintiff must prove intentional or purposeful discrimination." DeHorney v. Bank of Am. Nat'l

8

Trust & Sav. Ass'n, 879 F.2d 459, 467 (9th Cir. 1989); General Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982) ("§ 1981 . . . can only be violated by purposeful discrimination."). Generally, there are three elements that must be pled to state a claim under § 1981: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." Keum v. Virgin America Inc., 781 F. Supp. 2d 944, 954 (N.D. Cal. 2011). This section, unlike some other civil rights statutes, prohibits discrimination by both governmental and non-governmental actors. See 42 U.S.C. § 1981(c).

Plaintiff alleges in very general terms that he has been racially discriminated against, and that he is "a male, Hispanic, Hawaiian, individual minority." ECF No. 27 at 1, 4. Plaintiff does not, however, explain how defendants discriminated against him (i.e. what actions by defendants were racially motivated), nor does plaintiff allege any facts to support his claim that defendants' actions were in fact racially motivated. In order to state a claim for violation of § 1981 plaintiff must allege as to each and every defendant facts showing intentional discrimination on account of race. See Evans v. McKay, 869 F.2d 1341, 1344 (9th Cir. 1989). Because plaintiff has not alleged such facts, his § 1981 claims must be dismissed.

Plaintiff has been given two prior opportunities to allege facts demonstrating discriminatory intent on the part of defendant Walgreen, with guidance on the applicable law, but has failed to identify any facts that support an inference of racial motivation. At hearing on the instant motions, plaintiff was unable to proffer any facts indicating discriminatory intent as to any defendant. Plaintiff expressly confirmed that he infers discriminatory intent from the fact that he is a member of a minority racial group who was mistreated. He contends that these circumstances are sufficient to support an inference of discriminatory intent. That is not the law, as plaintiff has previously been advised. See DeHorney, 879 F.2d at 467 (proof of discriminatory intent required).

C.   42 U.S.C. § 1983

The court should dismiss plaintiff's § 1983 claims because the facts alleged do not support liability as to any defendant. Section 1983 "creates a cause of action against a person who, acting

1  under color of state law, deprives another of rights guaranteed under the Constitution."
2  Henderson v. City of Simi Valley, 305 F.3d 1052, 1056 (9th Cir. 2002).  "In order to allege a
3  claim upon which relief may be granted under § 1983, a plaintiff must show that he or she has
4  been deprived of a 'right secured by the Constitution and . . . law of the United States' and that
5  the deprivation was 'under color' of state law."  Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir.
6  2003) (citing Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978) (quoting 42 U.S.C. § 1983)).
7  "Action under color of state law normally consists of action taken by a public agency or officer."
8  Taylor v. First Wyo. Bank, N.A., 707 F.2d 388, 389 (9th Cir. 1983).

9       The SAC does not specify what right secured by the Constitution or federal law has been
10  violated, but plaintiff's overall theory of his case turns on racial discrimination.  Construed as
11  race-based equal protection claims, plaintiff's § 1983 claims fail for the same reasons his § 1981
12  claims fail.

13       Even more fundamentally, plaintiff's § 1983 claims fail because they do not lie against
14  private actors.  See Apao v. Bank of New York, 324 F.3d 1091, 1093 (9th Cir.), cert. denied, 540
15  U.S. 948 (2003) (§ 1983 "shields citizens from unlawful government actions, but does not affect
16  conduct by private entities.").  The only state official named in the SAC is Judge Webber, who is
17  immune from suit.  None of the other defendants are state actors or are alleged to have acted
18  under color of state law.  A private individual's conduct constitutes action under color of state law
19  only if it is "fairly attributable" to the state.  West v. Atkins, 487 U.S. 42, 49-50 (1988).  "[S]tate
20  action may be found if, though only if, there is such a close nexus between the state and the
21  challenged action that seemingly private behavior may be fairly treated as that of the state itself."
22  Brentwood Academy v. Tenn. Secondary Sch. Athletic Assoc., 531 U.S. 288, 295 (2001).  No
23  facts stated in the SAC, or proffered at the hearing, suggest that the conduct of any private
24  defendant named here could even arguably be attributed to the state under the applicable standard.

25       Plaintiff's allegations that Dr. Senegor treated him "through the worker's compensation
26  system," ECF No. 27 at 10, is insufficient as a matter of law to establish state action for purposes
27  of § 1983 liability. Private health care providers do not become state actors when they are paid by
28  the state, regulated by the state, or perform a public function.  See Taylor v. St. Vincent's Hosp.,

10

1  523 F.2d 75, 77 (9th Cir. 1975).  In the Ninth Circuit as in other circuits, private physicians who
2  treat unincarcerated patients are consistently dismissed from § 1983 actions for failing to come
3  within the color of state law requirement.  See Briley v. California, 564 F.2d 849, 855-56 (9th Cir.
4  1977) (collecting cases).[7]

5  Similarly, plaintiff cannot establish state action by alleging that the various private
6  defendants were part of a conspiracy that involved the worker's compensation system.  As
7  discussed below, the conspiracy claims are factually unsupported and facially implausible.
8  Moreover, even if the allegations are taken as true for purposes of the § 1983 color of state law
9  analysis, they would fail to establish that any private defendant was clothed with the authority of
10  the state when taking the actions identified in the SAC: Walgreen's failure to fill prescriptions;
11  Stockton MRI's use of contrast dye; Dr. Senegor's medical treatment; Liberty Mutual's handling
12  of claims; etc.  Any relation of these events to state action is entirely tangential.

13  For all these reasons, plaintiff's § 1983 claims should be dismissed.

14  D.    42 U.S.C. § 1985

15  Plaintiff has failed to allege facts sufficient to state a § 1985 claim.  Section 1985
16  proscribes conspiracies to interfere with civil rights.  Sanchez v. City of Santa Ana, 936 F.2d
17  1027, 1039 (9th Cir. 1990); Karim–Panahi v. Los Angeles Police Dept., 839 F.2d 621, 626 (9th
18  Cir. 1988).  The statute protects only against discrimination founded upon invidious, class-based
19  animus.  United Brotherhood of Carpenters v. Scott, 463 U.S. 825 (1983); Ramirez v. City of
20  Reno, 925 F.Supp. 681, 689 (D. Nev. 1996).  Plaintiff may be attempting to state claims under §
21  1985(3), which addresses conspiracies to deprive persons of rights.  Conspiracy claims under this
22  section require an allegation of racial, or perhaps otherwise class-based invidiously
23  discriminatory animus.  See Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).  Plaintiff may also
24  be attempting to state claims under § 1985(2), which addresses obstruction of justice including

---

[7] The result is different for doctors who contract with the state to provide medical to care to state inmates, because the state is directly responsible for providing medical services to inmates and the doctors are therefore acting on behalf of the state.  West, 487 U.S. at 49-50, 56.  West and progeny have no application here.

11

1   conspiracies to affect the due course of justice in a state.  See Bretz v. Kelman, 773 F.2d 1026,
2   1028 n.4 (9th Cir. 1985); see also Usher v. City of Los Angeles, 828 F.2d 556, 561 n.4 (9th Cir.
3   1987).  The requirement of racial or class-based animus applies to such claims as well.  See Bretz,
4   773 F.2d at 1030; Usher, 828 F.2d at 561.

5       As previously explained, plaintiff has not alleged any facts showing that defendants'
6   actions were motivated by racial animus.  Plaintiff has been twice instructed on the need to plead
7   specific facts establishing discriminatory intent where racial discrimination is alleged.  At hearing
8   on the instant motions, plaintiff was unable to proffer any facts not already pleaded that would
9   demonstrate the existence of racial animus on the part of any defendant.

10      Plaintiff has also failed to plead facts demonstrating that a conspiracy existed between
11  defendants to discriminate against him on the basis of race.  See Olsen v. Idaho State Bd. of Med.,
12  363 F.3d 916, 929 (9th Cir. 2004) (noting that allegations concerning the existence of a
13  conspiracy to violate a federal right must be supported by specific facts).  At the hearing, plaintiff
14  was unable to proffer any facts supporting the existence of an agreement among the defendants,
15  either to discriminate on the basis of race or to commit any of the acts complained of in the SAC.
16  Plaintiff infers the existence of a conspiracy from his experience of multiple alleged wrongs at the
17  hands of multiple individuals and entities connected to his worker's compensation claim(s) and
18  medical treatment.  This theory is insufficient to sustain a conspiracy claim.  Id.

19      For all these reasons, the § 1985 claims should be dismissed.

20      E.    RICO

21      In order to state a civil RICO claim, plaintiff must allege facts showing: (1) conduct (2) of
22  an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5)
23  causing injury to plaintiff's business or property ("RICO injury").  Living Designs, Inc. v. E.I.
24  Dupont de Nemours and Co., 431 F.3d 353, 361 (9th Cir. 2005); 18 U.S.C. § 1964(c).
25  "Racketeering activity" is defined to encompass a variety of criminal acts identified in 18 U.S.C.
26  § 1961(1).  Sanford v. MemberWorks, Inc., 625 F.3d 550, 557 (9th Cir. 2010).  To satisfy the
27  "pattern" requirement, there must be at least two acts of racketeering activity within a ten-year
28  time period.  18 U.S.C. § 1961(5).  In order to state a claim for RICO conspiracy, plaintiff must

1 allege that a person conspired to violate 18 U.S.C. § 1962(c), that he suffered RICO injury by
2 reason of overt acts, and that those overt acts constitute predicate acts under the RICO statute,
3 which were in furtherance of the conspiracy.  See, e.g., Reddy v. Litton Indus., Inc., 912 F.2d
4 291, 295 (9th Cir. 1990).

5 The SAC does not clearly identify the predicate acts upon which plaintiff's RICO claims
6 are based.  The complaint cites RICO generally as a basis for relief as to each cause of action,
7 which suggests that plaintiff believes every alleged tort or act of discrimination is part of a pattern
8 of racketeering activity.  Racketeeting activities actionable under RICO are of two types: (1)
9 specified crimes chargeable as felonies under state law, § 1961(1)(A), and (2) specified federal
10 offenses, § 1961(1)(B)-(G).  The only wrongful acts alleged in plaintiff's SAC that are
11 enumerated crimes under RICO are conspiracy to murder and obstruction of justice.

12 Racketeering activity includes "any act or threat involving murder."  18 U.S.C. §
13 1061(1)(A).  Plaintiff repeatedly alleges that all defendants acted individually and conspired
14 together against him in order to cause him severe bodily injury and/or to kill him.  ECF No. 27 at
15 2, 4, 6, 8, 11, 13-14.  This allegation lacks facial plausibility.  See Twombly, 550 U.S. at 570.
16 Moreover, the SAC is devoid of facts which would support a rational inference that any defendant
17 affirmatively intended any negative consequences to plaintiff's health.

18 Racketeering activity also includes acts indictable under federal statutes including 18
19 USCS § 1512, which prohibits tampering with a witness, victim, or informant in an official
20 proceeding.  § 1961(1)(B) (listing the violations of Title 18 that constitute "racketeering activity"
21 under RICO).  Plaintiff's SAC is peppered with references to "obstruction of justice."  The only
22 alleged act which could arguably constitute a violation of the enumerated federal obstruction
23 statutes, however, is the alleged assault by a Liberty Mutual attorney of plaintiff's unnamed
24 witness at or in relation to a worker's compensation hearing.  ECF No. 27 at 7.  The alleged
25 assailant has not been named as a defendant.  The other matters characterized in the SAC as
26 "obstruction" or "tampering" involve Judge Webber's rulings in in the course of the proceeding.
27 Id. (alleging that Judge Webber did not permit plaintiff to submit evidence, and that he failed to
28 take action when plaintiff reported perjury).  A judge's rulings, even if erroneous or unfair,

cannot be charged criminally as obstruction of justice, and therefore cannot constitute predicate acts under RICO. Because a single instance of interference with a witness does not establish a pattern of racketeering activity, and the alleged interference with a witness was not committed by a named defendant, plaintiff has failed to state a civil RICO claim.

To the extent plaintiff intends to present a RICO conspiracy claim, it fails for the same reasons. Moreover, as previously discussed regarding plaintiff's claims under 42 U.S.C. § 1985, the SAC contains no facts indicating the existence of any agreement. At the hearing, plaintiff was unable to proffer any facts supporting the existence of an agreement either to discriminate on the basis of race or to commit any of the acts complained of in the SAC. Plaintiff infers the existence of a conspiracy from his experience of multiple wrongs at the hands of multiple individuals and entities connected to his worker's compensation claim(s) and medical treatment. This inference is unsupported, and plaintiff's speculation is insufficient to entitle him to relief under RICO or any other statute.

### III. Leave to Amend

Generally, Rule 15 provides that "leave [to amend] shall be freely given when justice so requires." Plaintiff has already been given two chances to amend his discrimination claims against Walgreen, with detailed instructions by the court. Despite this, plaintiff's SAC does not measurably improve upon his original complaint. This repeated failure to cure the complaint's deficiencies supports dismissal without leave to amend, as least as to the § 1981 claims against Walgreen. See Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008).

The undersigned has carefully considered whether plaintiff should be permitted an opportunity to amend those claims asserted for the first time in the SAC, as to which he has not had the benefit of prior instructions from the court. Despite the Ninth Circuit's general policy of extreme liberality regarding amendment, district courts are only required to grant leave to amend if a complaint can possibly be saved. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000). "Courts are not required to grant leave to amend if a complaint lacks merit entirely." Id. Where a pleading cannot be cured by the allegation of additional facts, leave to amend need not be provided. Doe v. United States, 58 F.3d 494, 497(9th Cir.1995).

14

There is no basis to believe that plaintiff can cure the defects identified above. As to Judge Webber, because plaintiff challenges acts taken in defendant's judicial capacity, additional allegations could not overcome the defendant's immunity.[8] As to the § 1981 claims against defendants other than Walgreen, plaintiff has been previously advised regarding the elements of a § 1981 claim and the related requirements of Rule 8, and has demonstrated his inability to amend responsively to instructions. Moreover, in response to questioning at the hearing, plaintiff represented that he did not have additional facts going to racial animus. As to the § 1983 claims, not even the most creative interpretation of the events described in the complaint indicates the potential existence of facts that could satisfy the § 1983 color of law requirement as to any non-immune defendant. As to all civil rights claims, plaintiff has confirmed that his belief he was discriminated against on grounds of race arises entirely from the fact that he is of Hispanic and Hawaiian descent, and that the defendants injured him in various ways. Plaintiff is unable to allege that any defendant did or said anything that demonstrated racial motivation. As to RICO, the only factual allegation that could arguably constitute a predicate act was committed by someone who is not a named defendant, and amending to name her would be futile in the absence of a pattern of racketeering activity. There is no such pattern. Finally, plaintiff was unable at the hearing to proffer any plausible allegations that would support his conclusory claims of a conspiracy to kill him, a conspiracy to discriminate against him, or any other conspiracy. Plaintiff's belief in a conspiracy is entirely speculative.

In light of the history of this case, the allegations of the SAC, and plaintiff's statements at the three hearings that the undersigned has conducted on multiple motions to dismiss, the court concludes that further leave to amend would be futile and would unnecessarily prolong the litigation. See Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002) ("Because any amendment would be futile, there was no need to prolong the litigation by permitting further

---

[8] Moreover, the Rooker-Feldman doctrine precludes this court from entertaining claims arising from plaintiff's dissatisfaction with the outcome of his state worker's compensation case. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); Carmona v. Carmona, 603 F.3d 1041, 1050 (9th Cir. 2010).

15

1 amendment."). Accordingly, the undersigned recommends that the SAC be dismissed without
2 leave to amend.

### IV. Judge Webber's Motion to Declare Plaintiff a Vexatious Litigant

The court will recommend that Judge Webber's motion to declare plaintiff a vexatious litigant be denied, because defendant has not shown a pre-filing order is warranted at this time. The All Writs Act, 28 U.S.C. § 1651(a), gives district courts the "power to file restrictive pre-filing orders against vexatious litigants with abusive and lengthy histories of litigation." Weissman v. Quail Lodge Inc., 179 F.3d 1194, 1197 (9th Cir. 1999); see also Fink v. Gomez, 239 F.3d 989 (9th Cir. 2001) (recognizing court's inherent power to sanction willful or reckless conduct when combined with either frivolousness, harassment, or improper purpose). Such orders, however, "should rarely be filed." De Long v. Hennessey, 912 F.2d 1144, 1147 (9th Cir. 1990); see also Weissman, 179 F.3d at 1197.

The Ninth Circuit in DeLong articulated that the following four conditions must be met before the court enters a pre-filing review order: (1) plaintiff must be given adequate notice to oppose the order; (2) the court must provide an adequate record for review, listing the pleadings that led the court to conclude that a vexatious litigant order was warranted; (3) the court must make substantive findings as to the frivolous or harassing nature of the litigant's actions; and (4) the order must be narrowly tailored. 912 F.2d at 1147–48; see also Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1057–58 (9th Cir. 2007). To make substantive findings of frivolousness, the district court needs to look at "both the number and content of the filings as indicia" of the frivolousness of the litigant's claims. In re Powell, 851 F.2d 427, 431 (9th Cir. 1988); see also Moy v. United States, 906 F.2d 467, 470 (9th Cir. 1990) (holding that a pre-filing "injunction cannot issue merely upon a showing of litigiousness."). Absent "explicit substantive findings as to the frivolous or harassing nature of the plaintiff's filings," a district court may not issue a pre-filing order. O'Loughlin v. Doe, 920 F.2d 614, 618 (9th Cir. 1990).

Judge Webber argues that plaintiff's litigation history both in this court and in state court shows he is not litigating in good faith. Plaintiff's conduct, however, has not risen to the level specified in DeLong. Plaintiff filed two federal actions previous to this one, Espino v. Liberty

16

Mutual Ins. Co., No. 2:06-cv-01523-RRB-KJM (E.D. Cal. July 10, 2006) and Espino v. State of California, No. 2:08-cv-02153-FCD-EFB (E.D. Cal. Dec. 29, 2008), and two state actions asserting claims based on events related to his worker's compensation claim. See ECF No. 32 at 4–5. Plaintiff's first federal action asserted claims against Liberty Mutual, the State of California, the Department of Industrial Relations, Carrie Evans, and Robert McVilly for conduct related to his worker's compensation claim, which was pending at the time. Liberty Mutual, at *1 (Nov. 29, 2006) (M.J. Mueller) (findings recommending that Liberty Mutual's motion to dismiss be granted without leave to amend). Plaintiff's second federal action involved allegations "that GSE Construction, the workers' compensation board, Liberty Mutual and various medical personnel conspired to deny him adequate medical care and workers' compensation payments by falsifying medical records and other fraudulent activities." State of California, at *2 (Jan. 20, 2010) (M.J. Brennan) (findings recommending that plaintiff's action be dismissed with prejudice). Plaintiff's second federal action included claims against the State of California, the Department of Industrial Relations, GSE Construction, Liberty Mutual, Katchis, Harris and Yempuku, Daniel Reich, and Kaiser Permanente Medical Group. Id. at *1–2.

Having reviewed these prior cases, it does not appear that a substantive finding of frivolousness as to plaintiff's claims against any defendant has been made by any judge of this district court.[9] Accordingly, a pre-filing order at this time is not appropriate. See Smith v. Phoenix Technologies Ltd., No. 11–cv–01479–LHK, 2011 U.S. Dist. LEXIS 129846, at *22 (N.D. Cal. Nov. 9, 2011) (D.J. Koh) ("As previously discussed, the Court finds Plaintiff's current complaint frivolous because it alleges facts, such as economic losses in the tens of millions of dollars, that are fanciful or clearly baseless. However, this is the first court to make a substantive finding of the frivolousness of Plaintiff's complaint based on a theory of strict products liability. The Court does not find this single finding of frivolousness sufficient justification for imposing

---

[9] The court in Espino v. State of California did characterize plaintiff's filings as frivolous when it recommended that his complaint be dismissed without leave to amend. State of California, at *7. It is not clear to the undersigned, however, that the court intended to make a substantive finding of frivolousness.

the extreme remedy of a pre-filing order."); cf. Shalaby v. Bernzomatic, No. 11-cv-68 AJB POR, 2011 WL 4024800, at *11 (S.D. Cal. Sept. 9, 2011) (D.J. Battaglia) (declining to issue pre-filing order despite plaintiff's "lengthy history"). But see Perry v. Veolia Transport, No. 11–CV–176–LAB–RBB, 2011 U.S. Dist. LEXIS 113061, at *28 (S.D. Cal. Sept. 30, 2011) (D.J. Burns) ("The present complaint, as well as the previous state court actions, illustrate not only that Perry's suits are frivolous, but that they form a pattern of harassment.").

Accordingly, the undersigned declines to recommend the imposition of a vexatious litigant order. See Molski, 500 F.3d at 1065 n.8 (noting that a district court is under no obligation to issue a pre-filing order and "may exercise its sound discretion under the facts presented to choose any appropriate sanction"). However, the undersigned will make a substantive finding of frivolousness as to the complaint filed in this action. For the reasons explained above, plaintiff's allegations are far from sufficient to state a claim against any defendant. These deficiencies appear in plaintiff's SAC despite the court's previous findings and recommendations, which explained to plaintiff in detail how to draft a complaint that complies with the Federal Rules. In addition, plaintiff's allegations of a murder conspiracy are so entirely unsupported that they are rendered facially implausible. The court accordingly finds that plaintiff's allegations lack an arguable basis in law, are indisputably meritless, and are thus frivolous. See Neitzke v. Williams, 490 U.S. 319, 325 (1989) (discussing frivolousness standard applicable under 28 U.S.C. § 1915); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984) (same).

V.     Summary

In sum, the court finds that those claims not previously presented in plaintiff's FAC should be dismissed because plaintiff was not given leave to add new claims or defendants. In addition, claims against Judge Webber are barred by the Eleventh Amendment and the doctrine of judicial immunity. Plaintiff's remaining claims against Stockton MRI, Dr. Senegor, Walgreen, and Liberty Mutual should be dismissed because plaintiff has not alleged facts sufficient to state a claim under any of the statutes he cites. Because plaintiff has already amended twice and there is no reason to believe that further amendment would save his claims, the court recommends that the SAC be dismissed without leave to amend.

As a separate matter, the court finds that Judge Webber has not shown a pre-filing order limiting plaintiff's ability to file future claims in this court is appropriate at this time.

## CONCLUSION

In light of the foregoing, THE COURT HERBY RECOMMENDS that:

1. The pending motions to dismiss, ECF Nos. 29, 31, 40 and 42, be GRANTED without leave to amend;

2. Plaintiff's claims against Dr. Senegor be dismissed sua sponte; and

3. Judge Webber's motion to declare plaintiff a vexatious litigant, ECF No. 32, be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 11, 2016

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE